IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL ACTION |
| | : |
| vs. | : |
| | : NO.  08-CR-11 |
| EDWARD ECKENRODE, ET AL. | : |
| | : |
| Defendants | : |

**MEMORANDUM OPINION & ORDER**

GOLDEN, J.                                                                                                          JULY 10, 2008

Before the Court is defendant Shannon Marie Spatz's motion to suppress, in which defendant Edward Eckenrode joins. The Court will deny the motion for the reasons that follow.

**BACKGROUND**

Defendants are charged with conspiracy to make false statements to obtain a firearm, making false statements to obtain a firearm, and felon in possession of a firearm. Officers executed two warrants on defendants' residence in December 2007, and they now seek to suppress the evidence discovered as seized in violation of the Fourth Amendment. The Court held a hearing on the motion, at which it received the challenged affidavits and warrants into evidence. Because the outcome of this motion depends on the sufficiency of the affidavits supporting the search warrants, the Court will confine its analysis to the facts in those affidavits. See Illinois v. Gates, 462 U.S. 213, 236 (1983) ("we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.").

In December 2007, Amity Township Police Officer Christopher High responded to a call about a shooting at an Amity hotel. See Aff. of Christopher High at 1 (Govt. Ex. 1 at May 5,

2008 Mot. Hr'g). When he arrived, Officer High was informed that a male suspect had shot the hotel's bar manager in the abdomen and fled the scene. Id. Officer High spoke to the shooting victim, who described the events leading up to the shooting and provided a description of the shooter's age, appearance, and clothing. Id. Four days later, the victim identified defendant Edward Eckenrode out of a photo lineup composed of Eckenrode and two other individuals present on the night of the shooting. Id. at 1-2. Amity Township officers then spoke with Colebrookdale Township Police Officer David Viola, who informed them that he knew defendants Eckenrode and Spatz to reside at an Amity Township address because he had responded to a prior incident at the location, and Eckenrode had advised Officer Viola that he was the owner of the property. Id. at 2. Based upon this information, a Pennsylvania district justice issued a search and arrest warrant for the property Officer Viola had identified. (Govt. Ex. 1).

Officers executed the search warrant on December 14, 2007, seizing evidence related to the hotel shooting, including several firearms. (Govt. Ex. 1).[1] During the search, officers observed but did not seize several additional firearms. See Aff. of Robert Norton at ¶ 26 (Govt. Ex. 2 at May 5, 2008 Mot. Hr'g). The Amity Township officers then informed the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") of the weapons. Id. at ¶ 26. ATF had an open investigation on Eckenrode and Spatz concerning the purchase of firearms because

---

[1] Amity Township officers also executed a search warrant, issued on the same affidavit, at a Pottstown property where defendant Eckenrode and his wife were listed as the occupants. See Def.'s Mot. to Suppress at ¶ 4 (Dkt. Doc. No. 15). The search produced a small amount of ammunition, which defendants seek to suppress as well. Id. at ¶ 5. Because the search warrant for the Amity Township property and the search warrant for the Pottstown property are based upon the same affidavit, because defendants seek to suppress evidence recovered at both properties, and because defendants assert no difference between the two warrants, the Court will treat them as a single search warrant for purposes of review.

Eckenrode had previously been convicted of a crime punishable by more than one year imprisonment, and was thereby prohibited from possessing a firearm.  Id. at ¶¶ 11-12.  Pennsylvania State Trooper Robert Norton incorporated the information he received from Amity Township officers into an affidavit in support of a federal search warrant.  See id. at ¶¶ 24-26.  In addition, the federal warrant detailed the defendants' purchase of weapons from two licensed firearms dealers between 2001 and 2007.  See id. at ¶¶ 13-22.  The federal warrant also described security footage from one of the firearms dealers showing Spatz purchasing two firearms in July 2007, and Eckenrode handling the weapons in the dealer's parking lot shortly thereafter.  See id. at ¶¶ 14-16.  Based upon this information, a federal magistrate judge issued another search warrant for the Amity property.  (Govt. Ex. 2).  ATF officials executed the federal warrant about a week after the Amity Township officers executed the state warrant, seizing over two dozen firearms.  Id.

## APPLICABLE LAW[2]

Defendants assert that the Amity Township search warrant did not establish a sufficient nexus between Eckenrode's alleged conduct at the hotel and the items to be searched for at his residences.  Because the ATF obtained the federal warrant based in part on the Amity Township officers' observation of weapons in defendants' residence, defendants argue that the ATF's evidence should be suppressed as "fruit of the poisonous tree."  Wong Sun v. United States, 371 U.S. 471, 488 (1963).  Defendants do not otherwise challenge the ATF warrant.

---

[2] Defendants assert that Pennsylvania law controls, but "[i]t is a general rule that federal district courts will decide evidence questions in federal criminal cases on the basis of federal law, rather than state law." United States v. Rickus, 737 F.2d 360, 363 (3d Cir. 1984).  Indeed, federal law applies even if investigators obtained evidence in violation of state law, id. at 364, or the search warrant was "applied for, issued, and executed by state officers, and [defendant] was originally charged with state offenses." United States v. Stiver, 9 F.3d 298, 300 (3d Cir. 1993).

A magistrate judge may find probable cause to issue a warrant where, after considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. This Court must uphold the magistrate's probable cause finding if the affidavit on which it was based provided a substantial basis for his conclusion that a search would uncover evidence of wrongdoing. Id. at 236. It is unnecessary to determine whether probable cause actually existed, only whether the magistrate had a substantial basis for believing it existed. United States v. Jones, 994 F.2d 1051,1055 (3d Cir. 1994). The "resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id. at 1057-58 (*quoting* United States v. Ventresca, 380 U.S. 102, 109 (1965)).

The "good faith exception" may also apply. In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule does not apply to evidence resulting from law enforcement officials' good faith reliance on a warrant later determined to be constitutionally deficient. Id. at 906. To determine the applicability of the good faith exception, a Court asks "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999).[3]

**ANALYSIS**

Where "a motion to suppress evidence obtained pursuant to a warrant does not present a Fourth Amendment argument that should be decided in order to provide instruction to law

---

[3] There are four exceptions to this rule. See United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002) (explaining exceptions). The defendants have not argued that these exceptions apply, and it is therefore unnecessary to review them.

enforcement or to magistrate judges, it is appropriate for a reviewing court to turn 'immediately to a consideration of the officers' good faith.'"  United States v. Ninety-Two Thousand Four Hundred Twenty-Seven Dollars and Fifty-Seven Cents, 307 F.3d 137, 145 (3d Cir. 2002) (hereinafter "Ninety-Two Thousand") (quoting Leon, 468 U.S. at 925).  The present dispute is a good candidate for this approach because defendants challenge the nexus between the hotel shooting and their residence, which is not a novel question of law.  See, e.g., Ninety-Two Thousand, 307 F.3d at 145 (proceeding directly to good faith analysis where defendant challenges probable cause supporting warrant).

Starting from the proposition that the existence of a signed search warrant generally "suffices to prove that an officer conducted a search in good faith," United States v. Hodge, 246 F.3d 301, 308 (3d Cir. 2001), it is difficult to see where the challenged warrants fail.  The Court cannot identify anything in the challenged affidavits that should have made the officers think the searches were illegal.  The affidavit supporting the state warrants contains the victim's identification of the shooter out of a photo lineup including others present the night he was shot, and a police officer's provision of the location of defendants' residence based on Eckenrode's own statements.  See Aff. of Christopher High at 1-2.  Likewise, the federal warrant set forth records and surveillance demonstrating defendants' purchase of firearms, see Aff. of Robert Norton at ¶¶ 13-22, and included the reports from Amity Township officers that they had observed weapons in defendants' home while executing the state warrant.  Id. at ¶ 26.  In order to suppress the evidence, the Court would thus have to find that it was unreasonable for officers to have executed signed warrants based upon specific assertions concerning the alleged crimes and the likely locations of evidence.  Mindful that "a grudging or negative attitude by reviewing

courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," Jones, 994 F.2d at 1057 (internal citations and quotations omitted), the Court will decline to second-guess the officers' good faith reliance on the signed warrants.

In an abundance of caution, the Court will also assume that the good faith exception does not apply and analyze the matter under a totality of the circumstances review. Gates, 462 U.S. at 238. Defendants claim that there was an insufficient connection between the hotel shooting and the search of their residence, arguing that probable cause to believe a suspect committed a crime does not create probable cause to search that individual's home. While it is true that simple suspicion that an individual has committed a crime does not cast open the door to his residence, it is also true that "direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." United States v. Conley, 4 F.3d 1200, 1207 (3d Cir. 1993). A magistrate "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000). Here, the victim identified Eckenrode as the man who shot him and fled the scene, perhaps with his own wounds and in bloody clothing. See Aff. of Christopher High at 1. It was therefore reasonable for the district justice to have inferred that a fleeing suspect would have returned to his home and taken evidence with him. Moreover, "[i]f there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases." Jones, 994 F.2d at 1055-56. Thus, once the victim identified Eckenrode as the man that shot him, it became more likely that his home contained evidence of that crime. After considering the circumstances of the offense and the inferences the

district justice was permitted to make, the Court cannot say that he did not have a substantial basis for issuing the warrant.

Defendants also argue that the district justice should not have relied on the information concerning their residence from the Colebrookdale Township police officer because the affidavit did not specify the age of the tip and it may have been stale. Although the recency of the information in the affidavit is a relevant factor, "[a]ge alone . . . does not determine staleness." United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993). The "likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched." United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983). Typically, staleness challenges attack warrants to search for evidence of a transitory nature, such as narcotics or child pornography. See, e.g., United States v. Ritter, 416 F.3d 256, 263 (3d Cir. 2005) (staleness challenge to search warrant for drug-related evidence); Harvey, 2 F.3d at 1322 (child pornography evidence).

The staleness challenge here goes to the location of defendants' residence. The question is thus, given that defendants resided at a certain location in the past, was there probable cause to believe that the defendants continued to reside at that location when the warrant issued. There is less concern that the evidence may no longer be at the place to be searched in this case because it is the fact of defendants' residence at a specific address that is at issue, not the presence of transitory contraband. When the challenged evidence involves a fixed location and items of a more permanent nature, the staleness bar is higher. For example, in Ninety-Two Thousand, the Third Circuit found that an 11-month gap between criminal activity and the execution of the warrant was permissible because the search was for business records at a fixed commercial

location.  307 F.3d at 148.  Because it is reasonable to assume that residence at a particular address is no less transient than the location of records at a business, it follows that the district justice permissibly relied upon the Colebrookdale officers's tip regarding defendants' address. Considering this challenge in light of the "preference to be accorded to warrants," Jones, 994 F.2d at 1055, and viewing it in the totality of the circumstances, the Court finds defendants' staleness argument unpersuasive.

      The Court having found, both under the good faith exception and after a totality of the circumstances review, that the district justice appropriately issued the state warrant, it is unnecessary to address defendants' fruit of the poisonous tree argument as to the federal warrant.

      An appropriate Order accompanies this Memorandum Opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| : | |
| vs. : | |
| : | NO.  08-CR-11 |
| EDWARD ECKENRODE, ET AL. : | |
| : | |
| Defendants : | |

**ORDER**

AND NOW, this 10th day of July, 2008, it is hereby ORDERED that defendant Shannon Marie Spatz's motion to suppress (Document No. 15), in which defendant Edward Eckenrode joins, is DENIED.

BY THE COURT:

*S/THOMAS M. GOLDEN*
THOMAS M. GOLDEN, J.